**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLY BENTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21 C 3922** |
| | ) | |
| **ORTHO CLINICAL DIAGNOSTICS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Kimberly Benton has filed suit against Ortho Clinical Diagnostics, Inc. (Ortho), an in vitro diagnostics (IVD) company with which she sought employment. Benton contends that Ortho did not hire her as a Regional Health Systems Executive (HSE) because of her age in violation of the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-102. Ortho has moved for summary judgment. For the reasons stated below, the Court denies Ortho's motion.

## Background

The parties argue that various statements of fact, or responses to them submitted by the other, did not comport with Local Rule 56.1 because they were improperly disputed, unsupported by the cited evidence, or supported by evidence that was not produced in discovery. The Court takes note of these points and relies on the underlying record.

Ortho is a provider of equipment and products related to blood testing. On

November 19, 2020, Benton applied for a position with Ortho as a Regional HSE for the Upper Midwest Region which was assigned Requisition No. R0006071. A requisition number is a number assigned to a particular job opening for internal tracking purposes. The HSE role is Ortho's highest-level sales role; HSEs target C-Suite hospital executives within an integrated delivery network (IDN). An IDN is a group of hospitals that are affiliated. When Benton applied for the Upper Midwest HSE role, Ortho had six sales areas in the United States, one of which was the Midwest Area. Each area was divided into regions (e.g., Upper Midwest and Lower Midwest), and each region's HSE would report to the Area Sales Director. The Midwest Area did not have an acting Area Sales Director at the time of Benton's application.

After her initial screening, Benton began a series of interviews with people up and down the chain of command at Ortho. From January 2021 to early March 2021, Benton communicated with the following people regarding her candidacy, sometimes via e-mail or telephone, other times in a formal interview:

- Warren Stone, *Sales President of the Americas*
- John Meckles, *Vice President, North American Commercial Sales (acting as Interim Area Sales Director for the Midwest Area)*
- Rita Masini, *Senior Director, People and Culture*
- Burl Whitney, *Sales Director for the Central Area*
- Allison "Alli" Downing, *Regional Sales Manager of the Northern Plains*
- Wendy Greenberg, *Regional Sales Manager of the Central Plains*
- Marissa Amato, *North America Talent Acquisition Lead*
- Audra Jones, *Area Sales Director for the Southwest Area*
- Krissie Marsh, *Regional Health Systems Executive*
- Alex McNamara, *Customer Experience Manager*
- Lindsay Weikart, *Customer Experience Manager*

The list of eleven potential candidates for the HSE position was ultimately narrowed down to three—Benton and two internal candidates, Evan Butts and Alex McNamara. At the time, Butts and McNamara were both in entry-level roles at Ortho

2

and had no C-suite experience.  Benton was sixty-five years old and had a Master's in Business Administration and decades of industry experience.[1]

On February 3, 2021, Marissa Amato wrote an e-mail to Rita Masini alerting her that decisionmakers were "strongly considering both Alex and Evan for the position." Amato did this because Masini had earlier "mentioned . . . that they may not be qualified enough."  Pl.'s Ex. 11 at 2.  In response, Masini wrote that both Alex and Evan were "too junior" and did "not have the right background."  *Id*. at 1.  Masini further stated that because the stakes were high for the HSE role, she sought to elevate the quality of people hired for it, and she believed Alex and Evan were being put through the hiring process only "for development and exposure."  *Id*.  Amato responded that Alex and Evan were "definitely not just [being] put[] . . . through the process for exposure."  *Id*. John Meckles testified during his deposition that among the three candidates, "[he] thought at the time that [Benton] with her experience would have been the front runner." Meckles Dep. 19:20-22.

After receiving positive feedback from everyone she spoke with throughout the extended hiring process, Benton was considered a finalist for the position.  On February 26, 2021, Alli Downing e-mailed Benton to let her know that she and Wendy Greenberg were recommending her for the HSE role—a recommendation that was supported by their superior, Meckles—and that a written offer would be forthcoming.  Meckles then forwarded that recommendation to Masini, who forwarded it, along with Benton's resume, to Warren Stone, the new sales president as of November 2020.

---

[1] Benton contends that she has over thirty years' experience, but Ortho contends that her resume only shows about nineteen years of experience.

On March 3, 2021, Stone e-mailed Masini and Meckles stating that he was on board with "moving ahead with hiring" but had concerns about Benton as a candidate based on his review of her resume. Specifically, he thought her resume was "rather detailed and poorly constructed," had "few quantitative achievements,"[2] and it indicated regular changes in "roles and industry focus." Def.'s Ex. 15 at 2. Stone also asked Masini and Meckles for their thoughts. After this, those who previously supported Benton's candidacy shifted ground and stopped advocating for her hire. Amato stated: "FYI from Warren re: Kim Benton. Looks like she may not be our person." *Id*. Meckles stated:

> Got a bit of push back from my boss on the candidate. He was underwhelmed with the resume and our recruiters didn't do us any favors by citing her incessant reach outs to them and her communication style. Let's try to shoe-horn in 30 minutes and have a more in depth discussion about Kim, your face to face interviews with her, background, resume, etc.

Def.'s Ex. 19 at 2. And Downing stated:

> Wendy and I connected last night and based on the feedback from others, we are okay without making an offer to Kim. Although having a HSE would help moving forward, we can continue managing the IDN's from a regional level. I have the biggest hole in the Upper Midwest but have assigned stretch goals to both Evan and Alex to help on certain IDN's.

Def.'s Ex. 12 at 2.

On March 9, 2021—three business days after Stone stated he was on board to move forward with hiring for the Upper Midwest HSE role—Benton says that Downing

---

[2] The Court notes that Benton's resume includes the following quantitative achievements: "[I]ncreased annual sales 233% while maintaining a 52% profit margin against an industry standard of 35%"; "[t]ook revenues from $0 to $13M and implemented programs in over 50 hospitals"; "4% growth in 2017 . . . resulting in $1.8M in revenue";" executed the sales strategy for 10 high profile health systems." Pl.'s Ex. 6 at 1-4.

called her and stated that "[t]he new head of commercial sales Americas, Warren Stone, has put the HSE role on hold[]" and that "[t]he position is not being filled at this time." Pl.'s Dep. at 100:21-24, 101:1-9.[3]  Benton also says that Amato told her that Downing and Greenberg could not get approval from above Meckles; Stone had "stopped" her hiring; and Stone "want[ed] to re-evaluate the role and review candidate resumes."  *Id.* at 107:5-114.  On March 10, 2021, Ortho removed the HSE Upper Midwest position from its recruiting platform.

"Around the same time" that Benton was turned down for the position—the record is unclear exactly when—Ortho restructured its sales areas by collapsing the Midwest Area into the Central and Heartland Areas.  Def.'s Stmt. of Facts at 8. Downing and her region, the Northern Plains, were absorbed into the Central Area based in the Chicago area; Wendy Greenberg and her region, the Central Plains, were absorbed into the Heartland Area, based in Texas.

Around the same time, Evan Butts was given several professional development tasks—which Ortho refers to as "stretch goals"—with the aim of making him "an HSE in training if another position . . . would open that he'd want to apply for."  Meckles Dep. at 40:4-7.  Butts was also intermittently meeting with Stone, who believed Butts to have "a lot of potential runway in the organization."  Stone Dep. at 36:1-2.  Butts completed his "stretch goals" and was identified as a candidate for a future HSE role.

On April 26, 2021, Ortho posted an HSE position based in Minneapolis with the same job requisition number as the previously deleted Upper Midwest HSE role—

---

[3] Benton testified that, after her call with Downing on March 9, 2021, she prepared a chronology that included everything that she remembered being told in connection with her hiring process with Ortho.

Requisition No. R0006071.  On April 28, Ortho posted an additional HSE position based in Chicago.  Benton contacted Amato and asked if she would be considered for the Chicago-based HSE role (in the Central Area), as she was living in Chicago at the time. Benton's inquiry was shared with the Employee Relations department.  In an e-mail sent later that day, Peggy Best, Senior Manager of Employee Relations, told Masini that Benton was inquiring about the position and asked if it reflected "the changes" they had discussed.  Pl.'s Ex. 18.  On September 9, 2021, Benton applied for the Chicago-based HSE position in the Central Area, and she interviewed with Burl Whitney sometime after September 28, 2021.  Whitney decided not to extend Benton an offer for the position.

In late January/early February 2022, Whitney made a pitch to Meckles and Stone to offer the Minneapolis-based HSE role to Butts.[4]  Stone testified during his deposition that he had concerns about Butts, as he was "one of the youngest, if not the youngest, person that [Ortho had] placed into an HSE role from an experience perspective," and Butts's "experience was light for this type of role."  Stone Dep. at 39:7-12, 40:5-7. Despite these concerns, Whitney secured approval to offer Butts the position, which Butts accepted on February 11, 2022.

Benton filed an age discrimination complaint with the IDHR, and on June 11, 2021, the agency issued Benton a right-to-sue letter.  Shortly thereafter, on June 21, 2021, Benton filed suit against Ortho in the Circuit Court of Cook County.  On July 23, 2021, Ortho removed the case to this Court based on diversity of citizenship.  Ortho later moved to dismiss Benton's claim; the Court denied that motion.  Discovery is now

---

[4] Notably, Whitney's proposal is titled "Evan Butts – Why he is the right candidate for the HSE *Upper Midwest* Role."  Def.'s Ex. 25 at 3 (emphasis added).

complete, and Ortho has moved for summary judgment.

## Discussion

To prevail on its motion for summary judgment, Ortho must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cty. Sheriff's Dep't.*, 602 F.3d 845, 849 (7th Cir. 2010) (quotation marks omitted). For a claim of employment discrimination, then, the question the Court must ask is whether "the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Benton must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). In considering Ortho's motion, the Court views the evidence and draws all inferences in favor of Benton, the nonmoving party. *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).

The IHRA prohibits employers from discriminating against persons who are age forty and older because of their age. Courts apply to age-based IHRA claims the same analytical framework used in federal Age Discrimination in Employment (ADEA) claims. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016). To prevail on a theory of disparate treatment under the ADEA, "it's not enough to show that age was a motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th

7

Cir. 2018) (quotation marks omitted).

The Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016), elided the distinction between the direct and indirect methods for proving employment discrimination claims and stated that all evidence, direct or indirect, "belongs in a single pile and must be evaluated as a whole."  Though the Court may still apply the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate but-for causation, it need not do so if Benton's claim can survive summary judgment under *Ortiz*, which the Court concludes it can.  As such, the Court evaluates Benton's discrimination claim only under *Ortiz*.

Under *Ortiz*, the Court "assess[es] cumulatively all of the evidence" presented to determine whether "a reasonable factfinder [could] conclude that the plaintiff's . . . proscribed factor [such as age] caused the discharge or adverse employment action." *Ortiz*, 834 F.3d at 765.  "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id*.  Some factors that the Court considers are "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (quoting *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)) (internal quotation marks omitted).

## 1.    Statements by decision-maker

Benton contends that a jury could view Stone's remarks about focusing on a "growth culture" and on candidates who were "risk takers," "entrepreneurial" and who

8

had "learning agility" as code words reflecting ageist sentiments.  Stone Dep. at 24:5-12, 40:9-17.  Viewed in the light most favorable to Benton, Stone's remarks could reflect a preference for hiring and/or promoting younger sales personnel.  *E.E.O.C. v. Bd. Of Regents of Univ. of Wisconsin Sys.*, 288 F.3d 296, 303 (7th Cir. 2002) (a jury could reasonably draw the inference that agility and youth go hand-in-hand, particularly within the context of an employer pursuing a "new vision"); *see also, e.g., Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 935 (7th Cir. 2020) ("A remark or action by a decision-maker reflecting unlawful animus may be evidence of his or her attitudes more generally.").

These remarks were made by Stone, the person Benton contends made the discriminatory decision not to hire her.  And Stone's remarks were made in reference to his view of Ortho when he joined in November 2020 and his outlook on hiring for HSEs going forward.  Stone's remarks reasonably could be viewed as contemporaneous with his decision not to hire Benton and to "restructure" the relevant position.  For these reasons, the remarks are relevant evidence that supports Benton's claim, particularly when considered in conjunction with the other evidence discussed below.  *See, e.g.*, *Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997) (even remarks unrelated to the employment decision in question may support an inference of discriminatory intent when considered in conjunction with other evidence).

## 2.    Younger candidates treated more favorably

Ortho contends that Benton cannot show that a younger candidate was given the position for which she applied because it eliminated the position during restructuring.  It is undisputed that Ortho eliminated the Midwest sales area and therefore the Upper

Midwest Sales position as such.  But a reasonable jury could draw the inference that the new HSE positions that Ortho posted after Benton was passed over were effectively the same, albeit with new geographic labels.  First, the Upper Midwest position for which Benton applied and the position posted on April 26, 2021 have identical job requisition numbers, "families," and descriptions.  The requisitions for both read: "R0006071 IDN Sales Leader (Health Systems Executive) - Minneapolis, MN."  Def.'s Ex. 8, Pl.'s Ex. 15. Requisitions for other open HSE roles did not have this same number assigned to them, which may be read to indicate that requisition numbers are position-specific as opposed to level or title-specific.  See Pl.'s Ex. 16 (copy of "Job Requisition R0006860 IDN Sales Leader (Health Systems Executive) - Chicago, IL").

The Chicago-based Central Area HSE role that was posted on April 28, 2021 similarly has the same job description and "family" but a different requisition number and geographic location.  Though Benton does not dispute that the Upper Midwest and Central Areas are different regions within Ortho's organizational structure, a reasonable jury could find the supposedly new position was not actually different from the one for which Benton had applied and was turned down.  This is underscored by the fact that in his February 2022 pitch, Whitney himself referred to the role Butts ultimately was offered as "the HSE *Upper Midwest* Role" even though that geographical area is supposedly defunct.  Def.'s Ex. 25 at 3 (emphasis added).

Benton contends that Ortho's hiring of Butts for what she contends was the same HSE position for which she was turned down is evidence of age discrimination because Butts was significantly younger and less qualified for the role.  Benton makes a similar contention regarding Julian Gordon, another younger and arguably less qualified

individual who was hired for a HSE position in the Central Area in the fall of 2021.

Ortho contends that Butts is not a proper comparator because he was an internal candidate who was offered a different role under a different supervisor almost a year after Benton was rejected. It contends that Gordon is not similarly situated because his resume shows more years of experience than Benton, he was offered a role different from the one for which Benton applied, and the offer was given more than seven months after Benton's rejection.

As the Court just indicated, however, the claimed differences between the positions involve genuinely disputed facts. And even though "[s]imilarly situated employees must be directly comparable to the plaintiff in all material respects . . . they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (internal quotation marks omitted).

Benton's evidence that Ortho hired people younger and arguably less qualified than her for the HSE position is sufficient—at least together with the other evidence discussed in this decision—to permit a reasonable jury to find she was treated less favorably based on her age. *See Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021) (describing the similarly situated requirement as follows: "the employer [hired] someone outside the protected group who was not better qualified than the plaintiff.") (citing *Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 729 (7th Cir. 2013)).[5] There is ample evidence in the

---

[5] Ortho contends that Benton cannot support an inference of discriminatory intent under *Ortiz* with evidence that similarly situated employees outside of the protected class were treated more favorably and cites the following in support: "a finding of intentional discrimination may not be established *merely* with evidence that a person outside the protected class was treated better than the plaintiff." *Boss v. Castro*, 816 F.3d 910,

record to support a finding that—despite Benton's qualifications and the consistent support her candidacy received from everyone but Stone—Stone scrutinized Benton more heavily based on her resume while deeming younger, less qualified candidates like Butts and Gordon worthy of a risk.

Ortho also contends that Benton cannot show that Stone was aware of her age based solely on her resume.[6]  Though Stone may not have known Benton's exact age, a reasonable jury could infer that he deduced her approximate age—and certainly the fact that she was in protected class of persons over forty—from the years of work experience and higher education degrees her resume outlined.  Benton's resume includes employment dating back to 2002 and a section titled "additional experience" that she gained prior to 2002.  Pl.'s Ex. 6.  At a minimum, her resume makes clear that she was substantially older than Butts and Gordon, whose resumes did include graduation dates and, in Butts's case, an obviously lesser amount of professional experience.  Moreover, Greenberg, Downing, Masini and Amato all testified that they knew that Benton was older than forty, and the record permits an inference that one or more of them likely spoke to Stone about Benton, and/or to Meckles who then spoke to Stone.

Finally, to rebut Benton's contention that younger candidates were treated more favorably than her, Ortho has offered a declaration from Michelle Heintz, Senior

---

916-17 (7th Cir. 2016) (emphasis added).  Assuming Ortho is right about this—a point the Court need not decide—this contention incorrectly assumes that Benton has offered *only* evidence of more favorable treatment of younger applicants.
[6] It is undisputed that Stone and Benton never met or spoke on the phone.  It is also undisputed that neither Stone nor anyone else at Ortho made any age-related comments to or about Benton in her presence.

Director, People and Culture.  Heintz states that Ortho first offered the Chicago-based HSE Central Area role for which Benton applied in September 2021 to a woman named Tracy Kelly but that Kelly declined the offer and the requisition was closed on January 13, 2022.  Ortho has also offered Kelly's resume to show that, at the time of the offer, she was at least fifty-two years old and, like Benton, had decades of relevant sales experience.  Benton asks the Court not to consider Heintz's declaration because it was not produced in discovery and Ortho did not list Heintz in its Rule 26(a)(1) disclosures. This point is well-taken; Ortho did not previously disclose Heintz and has not shown that the disclosure is justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1).

But even if the Court were to consider the information in Heintz's declaration, it does not change the result.  Ortho's argument suggests that an employer is entitled to summary judgment if it did not discriminate against others in the protected class on other occasions, which (of course) is not the law.  *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587–88 (7th Cir. 2011) (rejecting argument that "the evidence did not support an inference of discrimination because at least one [candidate within the same protected class] was not discriminated against in the same way" as plaintiff alleged). The proposition that Ortho did not discriminate against a different candidate based on her age—apparently after Benton had filed her age discrimination claim—may be a point in Ortho's favor, but it does not entitle Ortho to summary judgment in Benton's case.

**3.    Pretext**

The pretext inquiry involves assessing whether the employer's proffered reason for not hiring a candidate was "the true ground of the employer's action rather than

being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). A factfinder may infer pretext from shifting and/or inconsistent justifications for an adverse decision. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1005–06 (7th Cir. 2002) (finding that the changed reasoning of the employer was sufficient to preclude summary judgment because a trier of fact could reasonably infer from that evidence that the defendants' proffered reasons were pretextual).

Benton has offered what a jury reasonably could find to be shifting explanations by Ortho for not offering her the Upper Midwest HSE position. When Benton was first rejected for the position, she was told that Stone had put the HSE spot on hold and that it would not be filled at that time. She was separately told that Stone "want[ed] to re-evaluate the role and review candidate resumes." Pl.'s Dep. at 107:5-114. A factfinder reasonably could find that these are mutually inconsistent explanations and that at least, perhaps, one of them also inconsistent with the justification Ortho has offered in this lawsuit, namely that the position for which Benton applied was eliminated as part of restructuring. The Court also notes that Stone expressed readiness to move forward with hiring for the Upper Midwest HSE position in the same e-mail in which he expressed concerns about Benton, which he sent just three business days before Benton was notified that she would not be getting an offer. A jury reasonably could find that Ortho's stated restructuring rationale is unworthy of credence given that such a large organizational change likely would take longer than three days to plan and put into effect, i.e. before Stone sent his e-mail citing a different reason for not hiring Benton and saying nothing about restructuring. *See Perdomo v. Browner*, 67 F.3d 140, 145 (7th

Cir.1995) ("Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment.").

Another item of evidence that Benton offers is the e-mail sent by Masini to Best, a manager in Ortho's Employee Relations department. According to Masini's deposition testimony, the Employee Relations department handles any inquiries relating to labor and employment legal issues. Masini Dep. at 42:12-167. In the e-mail, Masini told Best that Benton was inquiring about the HSE role posted on April 28, 2021 and wanted to know if the posting reflected "changes" to the position that the two had previously discussed. Pl.'s Ex. 18. Masini testified during her deposition that this e-mail was referencing changes to the job description that "they" (it is unclear who) wanted to make to reflect the sought-for "profile" for HSEs, which was also changing. Masini Dep. 48:5-17. Benton contends that "a jury could look at these facts and determine that [Ortho] did not eliminate the role and, instead, called it something different and reposted it." Pl.'s Resp. at 10. The Court agrees that this evidence, together with the other evidence the Court has discussed, reasonably could support such an inference.

### Conclusion

For the foregoing reasons, the Court denies defendant's motion for summary judgment [dkt. no. 40]. The case is set for a telephonic status hearing on February 7, 2023 at 9:00 a.m. to set a trial date and discuss the possibility of settlement. The following call-in number will be used: 888-684-8852; access code 746-1053.

Date: January 30, 2023 
_____
MATTHEW F. KENNELLY
United States District Judge

15